```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - :
JAMES DALY,                          :  16 Civ. 6521 (PAE) (JCF)
                                     :
              Plaintiff,             :       REPORT AND
                                     :     RECOMMENDATION
   - against -                       :
                                     :
NEW YORK CITY, NYC DOC, JOSEPH       :
PONTE, MAXSOLAINE MINGO, AMKC,       :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - :
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:
```

The plaintiff, James Daly, proceeding pro se, brings this action against the City of New York (the "City"); Joseph Ponte, former Commissioner of the New York City Department of Correction (the "DOC"); and Maxsolaine Mingo, former Warden of the Anna M. Kross Center (the "AMKC") on Rikers Island.[1] Mr. Daly sues under 42 U.S.C. § 1983, arguing that the defendants violated his constitutional rights by requiring him to sleep on an improperly mounted mattress, exacerbating pre-existing medical problems with his back. He now seeks injunctive relief in the form of a more suitable mattress, compensatory damages totaling $15,000,000, and punitive damages in the amount of $5,000,000.

The defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to which

---

[1] The plaintiff also named the AMKC and the DOC as defendants in his complaint, but the Court dismissed all claims against those defendants sua sponte. (Order dated Oct. 7, 2016 ("10/7/16 Order"), at 2).

1

the plaintiff has not responded. For the reasons that follow, I recommend that the motion be granted.

Background

Mr. Daly's complaint states that while he was being detained[2] at the AMKC, "the NYCDOC [] forced [him] to mis-use the Bob Barker mattress on a foundation when it is clearly labeled to be used without one." (Complaint ("Compl.") at 3). To substantiate this claim, he has attached a copy of a mattress tag to the complaint which states "this mattress is intended to be used without a foundation." (Mattress Warning Label, attached as exhibit to Compl.). Mr. Daly also claims that he suffers "from spinal stenosis as well as 2 crushed vertebrae." (Compl. at 3). He further asserts that "the NYCDOC is aware that this product causes medical issues and induces severe pain when it is mis-used" and that "[b]ecause of their deliberate indifference[, his] pre-existing condition has been exacerbated to the point of being continuously excruciatingly painful." (Compl. at 3).

Mr. Daly filed a grievance with the DOC on July 14, 2016, alleging that his mattress exacerbated his back conditions. (Compl. at 8). He brought this action two weeks later on July 28, 2017, after

---

[2] While no party has indicated whether Mr. Daly is a pre-trial detainee or a convicted prisoner, I will assume that he is the former, as he would be entitled to somewhat greater constitutional protection.

receiving no response to the grievance. (Compl. at 4, 7). When asked on the complaint form to describe what efforts he made to appeal the decision on his grievance, Mr. Daly states, "None, they never responded within 2 weeks." (Compl. at 4).

The defendants have moved to dismiss the complaint on the grounds that: (1) the plaintiff failed to exhaust his administrative remedies, (2) the constitutional claim is insufficiently pled, and (3) no facts are alleged in the complaint that could plausibly provide a basis for municipal or individual liability.

Discussion

    A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court's charge in ruling on a 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The court must construe the complaint in

the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

This standard applies equally to pro se plaintiffs, but their pleadings are read more liberally and are construed as raising the strongest claims implied. See Teichmann v. New York, 769 F.3d 821, 825 (2d Cir. 2014). The court may also consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." Martinez v. Aycock-West, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting Alsaifullah v. Furco, No. 12 Civ. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)). Finally, even if a plaintiff does not oppose a Rule 12(b)(6) motion, the failure to respond does not warrant dismissal if the complaint sufficiently states a claim. McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000).

B.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act bars a prisoner from bringing a § 1983 action related to prison conditions unless "administrative remedies . . . are exhausted." 42 U.S.C. § 1997e(a); see also Williams v. Priatno, 829 F.3d 118, 122 (2d Cir. 2016). Because failure to exhaust is an affirmative defense, a plaintiff's complaint need not allege that he has exhausted his administrative remedies. Williams, 839 F.3d at 122. Therefore, a court may dismiss a

complaint only if a plaintiff's failure to exhaust "is clear on the face of the complaint."  Id.

In this case, the plaintiff was required to comply with the DOC's multi-step Inmate Grievance Resolution Program ("IGRP"), which directs an inmate to:

> (1) file a complaint with the IGRC for informal resolution; (2) if an informal resolution is not reached within five days, request a formal hearing before the IGRC; (3) appeal the IGRC's decision to the facility warden; (4) appeal the facility warden's decision to the Central Office Review Committee ("CORC"); and (5) appeal the CORC's decision to the New York City Board of Correction ("BOC").

Cannon v. City of New York, Nos. 11 Civ. 8983 et al., 2013 WL 1234962, at *3 (S.D.N.Y. Jan. 29, 2013), report and recommendation adopted, 2013 WL 1248546 (S.D.N.Y. March 27, 2013); see also New York City Department of Correction, Directive re: Inmate Grievance and Request Program, § II.F, http://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376_Inmate_Grievance_Request_Program.pdf  (last visited May 19, 2017).  "A prisoner's remedies are not deemed exhausted until he proceeds through all five levels of the [IGRP]." Williams v. City of New York, No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005).

Pursuant to the IGRP, Mr. Daly filed a grievance on July 14, 2016.  (Compl. at 8).  He explains that he received no response to this grievance and did not take any additional steps.  (Compl. at

5

4). The defendants argue that this establishes a failure to exhaust and mandates dismissal. (Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint at 5).

While the lack of a response to an initial grievance by itself is not an excuse for failing to exhaust all remedies, other circumstances may excuse such a failure. Garvin v. Rivera, No. 13 Civ. 7054, 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015). The Supreme Court recently reaffirmed that a prisoner's failure to exhaust administrative remedies may be excused if the grievance procedure is not "available" to him. Ross v. Blake, __ U.S. __, __, 136 S. Ct. 1850, 1856 (2016). An administrative remedy is unavailable when, for example, "it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; when the procedure is "so opaque that it becomes, practically speaking, incapable of use"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

Because failure to exhaust is an affirmative defense and may be excused, courts in this Circuit have denied motions to dismiss complaints brought on that basis, even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure. See, e.g., Franklin v. New York City,

6

No. 16 Civ. 5549, 2017 WL 776105, at *5 (S.D.N.Y. Feb. 10, 2017) (where plaintiff alleged he did not receive response to grievance and failed to file appeal, court could not determine from face of complaint whether plaintiff "has failed to exhaust available remedies"); Shaw v. Ortiz, No. 15 Civ. 8964, 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016) (where plaintiff alleged he did not receive response to grievance and failed to file appeal, court could not determine from face of complaint "whether the prison's administrative remedies were in fact 'available'"); but cf. Mena v. City of New York, No. 13 Civ. 2430, 2016 WL 3948100, at *4-5 (S.D.N.Y. July 19, 2016) (granting defendants' motion for summary judgment for non-exhaustion where plaintiff failed to establish unavailability of grievance procedure and noting Department of Correction directive allowing "inmates [to] directly proceed to the next level of review in the event of the [Department's] failure to respond to a grievance"). Because it is not clear on the face of the complaint that Mr. Daly's failure to exhaust administrative remedies cannot be excused, the complaint should not be dismissed on that basis.

    C.    Conditions-of-Confinement Claim

In order to establish a § 1983 claim for unconstitutional conditions of confinement, a detainee must allege "(1) a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a

'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Mr. Daly's complaint fails on both counts.

1.  Objective Deprivation

Alleging an objectively, sufficiently serious deprivation requires the plaintiff to "show that the conditions . . . pose an unreasonable risk of serious damage to his health."  Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'"  Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995)).

The only condition Mr. Daly complains of is being forced to use a mattress on a foundation in apparent contravention of instructions that the mattress is intended to be used without a foundation. (Compl. at 3).  The plaintiff has not alleged any facts that plausibly link the exacerbation of his ailments to the supposed misuse of the mattress.  Accordingly, Mr. Daly's complaint is conclusory and fails to meet established pleading requirements.  See Iqbal, 556 U.S. at 678.

Furthermore, the "warning" label on the Bob Barker mattress used

8

at the AMKC relates not to chiropractic health, but to fire safety. See Howard v. City of New York, Nos. 12 Civ. 4069 et al., 2012 WL 7050623, at *6 (S.D.N.Y. Dec. 20, 2012)("[T]he warning relates to fire safety . . . . [T]here is no reason to believe that the instructions relate to chiropractic health."). To the extent that Mr. Daly's complaint may be read to assert that the Bob Barker mattress is simply uncomfortable, "the Constitution does not require 'comfortable' prison conditions." Walker, 717 F.3d at 125 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)).

    2. Culpability

In the past, in order to make out a successful conditions of confinement claim, both pre-trial detainees and convicted prisoners were required to show that a defendant subjectively knew of a risk and disregarded it. See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (overruled by Darnell, 849 F.3d 17. Recently however, the Second Circuit has lowered this burden for pre-trial detainees in response to the Supreme Court's decision in Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466 (2015). Darnell, 849 F.3d at 29-36. Now, a pre-trial detainee can meet this prong by showing objectively that a reasonable person should have known of the risk of deprivation. Id. at 36. Accordingly,

> [T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even

though the defendant-official knew, or should have known, that
the condition posed an excessive risk to health or safety.

Id. at 35.

Here, although he claims to have been "subjected to deliberate indifference" (Compl. at 3), Mr. Daly has wholly failed to allege that any specific individuals were aware or should have been aware of the health risk to which he claims he was exposed.  He states only that the "NYCDOC is aware that this product causes medical issues . . . when it is mis-used, and yet has done nothing to replace this product." (Compl. at 3).  Yet the DOC is not a defendant, and the plaintiff does not allege facts suggesting that any individual defendant had the requisite state of mind.  Accordingly, Mr. Daly's pleading falls short of plausibly alleging deliberate indifference by any party.

D. Personal Involvement of Named Defendants

The Second Circuit has long required plaintiffs to show a defendant's personal involvement in the alleged constitutional deprivation to successfully bring a § 1983 claim against him.  See Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).  In the instant case, Mr. Daly has named two individuals as defendants: Commissioner Joseph Ponte of the DOC and Warden Maxsolaine Mingo of the AMKC.  However, he has not provided any facts that would allow the Court to infer either individual's personal involvement.  In fact, neither of them is mentioned at all in the complaint except

to be named as defendants.

Read liberally, as a <u>pro se</u> plaintiff's complaint must be, Mr. Daly could be attempting to implicate Commissioner Ponte or Warden Mingo under a respondeat superior or chain-of-command rationale, but neither theory can serve as the basis for a § 1983 claim. <u>Hernandez v. Keane</u>, 341 F.3d 137, 144-45 (2003). Instead, Mr. Daly must show the necessary personal involvement by pleading that these defendants: (1) participated directly in the violation; (2) failed to remedy the wrong after learning of the violation; (3) created a policy or custom under which unconstitutional practices occurred; (4) were grossly negligent in supervising subordinates who caused the unlawful condition or event; or (5) exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. <u>Id.</u> at 145; <u>Morgan v. Ward</u>, No. 14 Civ. 7921, 2016 WL 427913, at *6 (S.D.N.Y. Feb. 2, 2016). As Mr. Daly has not met any of these standards, the motion to dismiss should be granted on these grounds as well.

E.  <u>Municipal Liability</u>

Municipal liability may be found even in absence of individual liability, so long as there is a constitutional injury. <u>See</u> <u>Barrett v. Orange County Human Rights Commission</u>, 194 F.3d 341, 344-50 (2d Cir. 1999). However, since the plaintiff here has failed to state a claim against any correction official, his claim against the City

11

of New York likewise fails.  See Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality.").

    F.    Leave to Amend

The Second Circuit has held that a pro se litigant should be afforded at least one opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint [will] succeed in stating a claim." Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1990) (per curiam).  Mr. Daly has not yet been given that chance.  He should therefore be permitted to amend his complaint, consistent with this Report and Recommendation.

Conclusion

For the reasons discussed above, I recommend that the defendants' motion be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the

Chambers of the Honorable Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

                        Respectfully submitted,

                        */s/ James C. Francis IV*
                        JAMES C. FRANCIS IV
                        UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
           May 30, 2017

Copies transmitted this date to:

James Daly
895-16-00900
North Infirmary Command
15-00 Hazen St.
East Elmhurst, NY 11370

Neil A. Giovannatti, Esq.
New York City Law Department
100 Church St.
New York, NY 10007